1

1             UNITED STATES DISTRICT COURT
              EASTERN DISTRICT OF NEW YORK
2
  - - - - - - - - - - - - - X
3
   UNITED STATES OF AMERICA,  :   19-CR-556(CBA)
4                      :
                      :   U.S. Courthouse
5                      :   Brooklyn, New York
      -against-          :
6                      :   TRANSCRIPT OF
                      :   STATUS CONFERENCE
7                      :
                      :
8   RICHARD PALMER,         :   December 22, 2020
                      :   12:00 p.m.
9       Defendant.        :
                      :
10  - - - - - - - - - - - - - X

11  BEFORE:
               HONORABLE CAROL B. AMON, U.S.D.J.
12
  APPEARANCES:
13
  For the Government:      SETH D. DuCHARME, ESQ.
14                      Acting United States Attorney
                      271 Cadman Plaza East
15                      Brooklyn, New York 11201
                      BY:  DEVON LASH, ESQ.
16                          Assistant U.S. Attorney

17
  For the Defendant:       FEDERAL DEFENDERS OF NEW YORK, INC.
18                      BY:  AMANDA DAVID, ESQ.

19

20
  Court Reporter:     Holly Driscoll, CSR, FCRR
21                  Chief Court Reporter
                  225 Cadman Plaza East
22                  Brooklyn, New York 11201
                  (718) 613-2274
23

24
  Proceedings recorded by mechanical stenography, transcript
25  produced by Computer-Assisted Transcript.

2

1      (THE FOLLOWING TAKES PLACE VIA VIDEOCONFERENCE:)

2      THE COURTROOM DEPUTY:  I just want to remind all the

3  parties on the line that recording proceedings is prohibited

4  by the Local Civil Rule 1.8.

5      This is criminal cause for a status conference,

6  19-CR-556, USA versus Richard Palmer.

7      May the parties please state your name for the

8  record starting with the defense.

9      MS. DAVID:  Good afternoon, Your Honor, Amanda David

10  on behalf of Mr. Richard Palmer who is also appearing by

11  video.

12      THE COURT:  Good afternoon.

13      MS. LASH:  Good afternoon, Your Honor, Devon Lash on

14  behalf of the United States.

15      THE COURT:  Good afternoon.  And the defendant is --

16  where is the defendant incarcerated, in MDC or MCC?

17      MS. DAVID:  He's at the MCC.

18      THE COURT:  Okay.

19      Mr. Palmer, can you hear?

20      THE DEFENDANT:  Yes, I can, ma'am.

21      THE COURT:  Okay.  This matter we had thought was on

22  for a guilty plea but I understand now that has not been

23  resolved, you were waiting for a report to share with the

24  government.  Let me just ask, Ms. David, did you get that

25  report and did you provide it to the government?

3

1      MS. DAVID:  Yes, Your Honor, we did receive the

2  report.  I did also discuss with the government whether or not

3  they thought the report would result in a resolution that we

4  proposed.  It seems that that would not have been the case so

5  we have not at this time shared the report in large part

6  because it seems like we would not come to a resolution even

7  in light of that report.

8      THE COURT:  Now, I'm sorry, you mean you didn't give

9  the report to the government?

10      MS. DAVID:  No, Your Honor.  We did discuss the

11  report and what possible plea offers would be available and my

12  understanding is that the government at this time would not be

13  willing to provide a different plea offer or likely wouldn't

14  provide a different plea offer despite the generation of the

15  report.

16      THE COURT:  Does the government want to be heard on

17  this?

18      MS. LASH:  Yes, Your Honor, that's generally

19  correct.  In preparation for receiving the mitigation report I

20  prepared a report for the committee in our office that reviews

21  these and the preliminary thought from that committee is that

22  because of the defendant's criminal history and the charges

23  that he faces under the indictment that we would likely not

24  offer him anything less than the plea offer that we've

25  offered.  I communicated that to defense counsel and she

4

1    decided not to release the mitigation report to us.

2         THE COURT:  Well, if that was the government's

3    position, why have we been waiting all this time for this

4    report if the report wasn't going to change your view in any

5    event?

6         MS. LASH:  Your Honor, in looking -- in preparing

7    for the mitigation report, what we discovered is that because

8    of Mr. Palmer's prior conviction in 2010 for promoting the

9    sexual performance of a child under 17, that even under the

10   distribution charges he faces a mandatory minimum of 15 years.

11        THE COURT:  Of how long?

12        MS. LASH:  15 years and that was communicated to the

13   defense.  I think there was some disagreement on the legal

14   outcome of that but at our last discussion it seems the

15   defense counsel agrees with the government's position that

16   that is the charges that the defendant faces.

17        THE COURT:  So, he faces a mandatory minimum of 15

18   years under the current structure of the indictment; is that

19   correct?

20        MS. LASH:  There was no disagreement that he always

21   faced a mandatory minimum of 15 years on the top count of

22   sexual exploitation of a child.  There was initially some

23   disagreement of whether he faced 15 years on the distribution

24   of child pornography charges and I think that the defense now

25   agrees with the government that even under those lesser counts

1   he also faces a mandatory minimum of 15 years.

2         THE COURT:  Well, so on each count you're saying he

3   faces a mandatory minimum of 15 years or on at least two of

4   the counts, is that --

5         MS. LASH:  So, he faces a mandatory minimum of 15

6   years under Counts One through Seven and Count Eight is

7   possession of child pornography and there he faces a mandatory

8   minimum of ten years.  So, I think the defense's hope was that

9   there would be an offer that would allow him to plead to that

10  very bottom count of the indictment and the government's

11  decision at this time is that that's not possible.

12        THE COURT:  Well, it just seems like a lot of time

13  has gone by and that would have been the government's ultimate

14  position whether the report was produced or not, right?  I

15  just --

16        MS. LASH:  Well --

17        THE COURT:  I'm sorry, we -- (audio drop) this

18  time -- I'm sorry, go ahead.

19        MS. LASH:  No, I'm sorry, Your Honor, I didn't mean

20  to interrupt you.  We certainly made clear to the defense that

21  we would look at and consider the report but they ultimately

22  decided not to produce it.

23        THE COURT:  But that is because your decision to

24  them was no matter what the report says this is going to be

25  our position, I mean have I just accurately stated it?

6

1          MS. LASH:  No, Your Honor, I wouldn't say no matter

2    what the report said but due to the past conviction and the

3    mandatory minimum that the defendant faced on seven of the

4    eight counts, I think I told the defense that it was highly

5    unlikely.

6          THE COURT:  Okay.  Then I guess the question is

7    where do we go from here?

8          Ms. David, you indicated you wanted to make motions.

9          MS. DAVID:  Yes, Your Honor, I think because we're

10   not able to resolve the case at this time and I know the Court

11   has been patiently awaiting a possible resolution that it

12   maybe makes sense at this point to set a motion schedule.

13         THE COURT:  Do you know what motions you would

14   likely make here?

15         MS. DAVID:  Based on my current review of the

16   discovery and in discussions with Mr. Palmer, we would likely

17   be filing a motion for the Court to consider dismissing the

18   top count, the attempted sexual exploitation of a child.

19         THE COURT:  On what grounds?

20         MS. DAVID:  On the grounds that the conduct in this

21   case doesn't meet the DOST, D-O-S-T, standards that are

22   required by the statute and current case law.

23         THE COURT:  Is that apparent on the face of the

24   indictment?

25         MS. DAVID:  Your Honor, we would argue that it is

7

1  apparent from the face of the indictment and based on the

2  information that we have received so far in discovery.

3           THE COURT:  Any other motions that you envision

4  making?

5           MS. DAVID:  I don't anticipate -- I don't anticipate

6  at this time making any other additional motions but would

7  like the opportunity to consider a possible motion to suppress

8  Mr. Palmer's statement.

9           THE COURT:  His statement?

10          MS. DAVID:  Yes.

11          THE COURT:  All right.  Ms. David, when can you file

12  these motions?

13          MS. DAVID:  Your Honor, I would ask for a date at

14  the beginning of February which I understand is a little bit

15  longer but because of the difficulties we've had getting in

16  touch with our clients at the facility in light of the

17  lockdown, I do want the opportunity to be able to discuss this

18  with Mr. Palmer before filing it.

19          THE COURT:  Is it acceptable if I deem you to have

20  made an oral motion today and then give you a date to file

21  your papers?

22          MS. DAVID:  I'm sorry, Your Honor?

23          THE COURT:  I said is it acceptable to you if I deem

24  that you've made an oral motion today to dismiss the top count

25  of the indictment and I'll give you until February 4th to file

8

1    your papers?

2           MS. DAVID:  Yes, Your Honor, that works for the

3    defense.

4           THE COURT:  And so then time will be excluded from

5    today's date on the basis of pending motions.  So, if you

6    could file your papers on the 4th, if the government could

7    respond on February 18th.

8           MS. LASH:  Yes, Your Honor.

9           THE COURT:  And do we have a slot open on February

10   25th?

11          THE COURTROOM DEPUTY:  February 25th, Judge.

12          THE COURT:  Yes.

13          THE COURTROOM DEPUTY:  Yes, we do.

14          THE COURT:  I guess we have to make it at noon.

15          THE COURTROOM DEPUTY:  Yes, just to coordinate with

16   MCC.

17          THE COURT:  Okay.  How long, assuming the motion is

18   for some reason not successful, how long is it going to take

19   to try this case does the government believe?

20          MS. LASH:  Your Honor, at this time the government

21   doesn't anticipate that it would take more than three days to

22   try this case.

23          THE COURT:  All right.

24          MS. LASH:  Do we have trial dates in April, let me

25   just ask Ms. Campbell, or jury return dates in April?

9

1          THE COURTROOM DEPUTY:  There are return dates in

2   April, Judge, but I can't confirm if the schedule -- because

3   of the January date that has been pushed back now to February

4   and March but there is a date in April.

5          THE COURT:  What is the date, the jury return date?

6          THE COURTROOM DEPUTY:  One second, Judge, I have to

7   pull up Brenna's email.

8          (Pause.)

9          THE COURTROOM DEPUTY:  So, the first jury return

10  date would be April 5th.

11         THE COURT:  Is there one on April 19th, just to give

12  us a few more --

13         THE COURTROOM DEPUTY:  Yes, Judge.

14         THE COURT:  All right, let's set it down for April

15  19th.

16         MS. DAVID:  I'm sorry, Your Honor --

17         THE COURT:  What's the matter, Ms. David?

18         MS. DAVID:  I'm sorry, Your Honor, I'm actually not

19  available on that date.  Would it be possible to do the next

20  jury return date?

21         THE COURT:  What would that be?

22         THE COURTROOM DEPUTY:  That would be May --

23         THE COURT:  May 3rd.

24         THE COURTROOM DEPUTY:  May 3rd, correct.

25         THE COURT:  Okay, we'll put it down for May 3rd.  Is

10

1  that acceptable to everyone?

2         MS. LASH:  Yes, Your Honor.

3         MS. DAVID:  Yes, Your Honor.

4         THE COURT:  Okay.  All right.  Then the issues will

5  be briefed and then we'll hear argument on the 25th and go

6  from there.

7         Anything else?

8         MS. LASH:  Your Honor, just one more thing from the

9  government, I wanted to put the Court on notice that the

10  government is going to be filing a superseding trial

11  indictment.  We don't intend to drop the top count so I can't

12  see how that would affect the defense's motion but -- and

13  we'll do it just as soon as we can get a grand jury to hear

14  the superseding indictment back.

15         THE COURT:  What is the anticipated change in the

16  indictment?

17         MS. LASH:  The government intends to add a coercion

18  count to the indictment and we'll streamline some of the

19  distribution counts which we charged by image.

20         THE COURT:  What is the effect of adding the

21  coercion count, does that enhance the penalties or --

22         MS. LASH:  No, Your Honor, I don't think it enhances

23  the penalties here but in looking at the conduct and the

24  discovery, we think it is appropriate to add here.

25         THE COURT:  When you say coercion count, in

1    connection with which, the first count of the indictment or

2    what is the -- the coercion count relates to what?

3               MS. LASH:  Yes, Your Honor, it would be the coercion

4    and enticement of John Doe, the minor named in the top count

5    of the indictment.

6               THE COURT:  Okay, but is that -- does that count,

7    the coercion count also carry a 15 year mandatory minimum?

8               MS. LASH:  No, Your Honor, the coercion count would

9    carry a ten year mandatory minimum.

10              THE COURT:  Can you -- you don't have -- I'm sorry,

11   I'm not making any sense.  When do you believe you'll have a

12   grand jury?  You don't have a grand jury right now?

13              MS. LASH:  Not one that is consistent enough for me

14   to give you a date.  Our hope is to file this within the first

15   two weeks of January.  We've lost three of our weekly grand

16   juries so we're down -- we are empaneling new grand juries in

17   the middle of January but we're hoping to do it before then.

18              THE COURT:  All right.  So, it would be important to

19   do this as soon as you can because it might affect Ms. David's

20   motion; in other words, if that adds another element, she was

21   indicating that she believed that on the face of the

22   indictment you couldn't make out the first charge which is --

23   you know, generally those are difficult motions because you

24   have to hear what the evidence is.  I suppose if the evidence

25   were undisputed or if she's not disputing the government's

1   version of the facts, maybe there would be a possible motion

2   but she may also want to address this coercion count in her

3   motion papers, so the sooner you can do that the better.  But,

4   Ms. David, I guess you understand, knowing the facts of the

5   case, what the coercion is related to.

6                    MS. DAVID:  I do, Your Honor, yeah, it would be

7   helpful to see the new indictment obviously before filing.

8                    THE COURT:  Okay.  Well, let's hope you can do that

9   because your papers are due in early February.

10                   Anything else that either side needs to address?

11                   MS. LASH:  Nothing from the government, Your Honor.

12                   THE COURT:  Okay.

13                   MS. DAVID:  Nothing from the defense.

14                   THE COURT:  Thank you.

15                   THE COURTROOM DEPUTY:  Thank you all.  Happy

16  holidays.

17                   MS. LASH:  Thank you.

18                   (Time noted:  12:21 p.m.)

19                   (End of proceedings.)

20

21

22

23

24

25

I, HOLLY DRISCOLL, HEREBY CERTIFY THAT:

(A) THE FOREGOING PAGES REPRESENT AN ACCURATE AND COMPLETE

TRANSCRIPTION OF THE ENTIRE RECORD OF THE PROCEEDING BEFORE

THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT

OF NEW YORK, JUDGE AMON PRESIDING, IN THE MATTER OF

UNITED STATES OF AMERICA v. RICHARD PALMER, 19-CR-556(CBA),

HELD DECEMBER 22, 2020 AND (B) THESE PAGES CONSTITUTE THE

ORIGINAL TRANSCRIPT OF THE PROCEEDING.


HOLLY DRISCOLL, CSR, FCRR

CHIEF COURT REPORTER