

U.S. Department of Justice

United States Attorney
Eastern District of New York

SK:DEL
F. #2019R01327

271 Cadman Plaza East
Brooklyn, New York 11201

February 25, 2021

By ECF and Email

The Honorable Carol B. Amon
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re: United States v. Richard Palmer
Criminal Docket No. 19-556 (S-1) (CBA)

Dear Judge Amon:

The government respectfully submits this letter to clarify the record in light of a discussion at today's status conference regarding defendant Richard Palmer's submission to the government seeking mitigation. After previous discussions with the undersigned about the fact that it was unlikely that such a submission would result in a different plea offer, defense counsel, in her discretion, chose not to submit a request for mitigation and any underlying psychological reports to the government. This decision was discussed at a status conference on December 22, 2020. See Transcript of Dec. 22, 2020 Status Conference at 3-6, ECF Dkt. No. 34, attached hereto. The government, therefore, is not in receipt of this report. If, at any time, the defendant seeks to make such a submission, the government will review and consider it.

Respectfully submitted,

SETH D. DuCHARME
Acting United States Attorney

By: /s/ Devon Lash
Devon Lash
Andrew Wenzel
Assistant U.S. Attorneys
(718) 254-7000

1

```
                    UNITED STATES DISTRICT COURT
1                   EASTERN DISTRICT OF NEW YORK
2   - - - - - - - - - - - - - - X
3
     UNITED STATES OF AMERICA,    :   19-CR-556(CBA)
4                                 :
                                  :   U.S. Courthouse
5                                 :   Brooklyn, New York
          -against-               :
6                                 :   TRANSCRIPT OF
                                  :   STATUS CONFERENCE
7                                 :
                                  :
8    RICHARD PALMER,              :   December 22, 2020
                                  :   12:00 p.m.
9          Defendant.             :
                                  :
10  - - - - - - - - - - - - - - X

11  BEFORE:
                 HONORABLE CAROL B. AMON, U.S.D.J.
12
    APPEARANCES:
13
    For the Government:      SETH D. DuCHARME, ESQ.
14                           Acting United States Attorney
                             271 Cadman Plaza East
15                           Brooklyn, New York 11201
                             BY:  DEVON LASH, ESQ.
16                                Assistant U.S. Attorney

17
    For the Defendant:       FEDERAL DEFENDERS OF NEW YORK, INC.
18                           BY:  AMANDA DAVID, ESQ.

19

20
    Court Reporter:          Holly Driscoll, CSR, FCRR
21                           Chief Court Reporter
                             225 Cadman Plaza East
22                           Brooklyn, New York 11201
                             (718) 613-2274
23

24
    Proceedings recorded by mechanical stenography, transcript
25  produced by Computer-Assisted Transcript.
```

*HOLLY DRISCOLL, CSR, FCRR*
*OFFICIAL COURT REPORTER*

2

1           (THE FOLLOWING TAKES PLACE VIA VIDEOCONFERENCE:)

2           THE COURTROOM DEPUTY: I just want to remind all the parties on the line that recording proceedings is prohibited by the Local Civil Rule 1.8.

5           This is criminal cause for a status conference, 19-CR-556, USA versus Richard Palmer.

7           May the parties please state your name for the record starting with the defense.

9           MS. DAVID: Good afternoon, Your Honor, Amanda David on behalf of Mr. Richard Palmer who is also appearing by video.

12           THE COURT: Good afternoon.

13           MS. LASH: Good afternoon, Your Honor, Devon Lash on behalf of the United States.

15           THE COURT: Good afternoon. And the defendant is -- where is the defendant incarcerated, in MDC or MCC?

17           MS. DAVID: He's at the MCC.

18           THE COURT: Okay.

19           Mr. Palmer, can you hear?

20           THE DEFENDANT: Yes, I can, ma'am.

21           THE COURT: Okay. This matter we had thought was on for a guilty plea but I understand now that has not been resolved, you were waiting for a report to share with the government. Let me just ask, Ms. David, did you get that report and did you provide it to the government?

3

1          MS. DAVID:  Yes, Your Honor, we did receive the
2  report.  I did also discuss with the government whether or not
3  they thought the report would result in a resolution that we
4  proposed.  It seems that that would not have been the case so
5  we have not at this time shared the report in large part
6  because it seems like we would not come to a resolution even
7  in light of that report.
8          THE COURT:  Now, I'm sorry, you mean you didn't give
9  the report to the government?
10         MS. DAVID:  No, Your Honor.  We did discuss the
11 report and what possible plea offers would be available and my
12 understanding is that the government at this time would not be
13 willing to provide a different plea offer or likely wouldn't
14 provide a different plea offer despite the generation of the
15 report.
16         THE COURT:  Does the government want to be heard on
17 this?
18         MS. LASH:  Yes, Your Honor, that's generally
19 correct.  In preparation for receiving the mitigation report I
20 prepared a report for the committee in our office that reviews
21 these and the preliminary thought from that committee is that
22 because of the defendant's criminal history and the charges
23 that he faces under the indictment that we would likely not
24 offer him anything less than the plea offer that we've
25 offered.  I communicated that to defense counsel and she

4

1  decided not to release the mitigation report to us.
2          THE COURT: Well, if that was the government's
3  position, why have we been waiting all this time for this
4  report if the report wasn't going to change your view in any
5  event?
6          MS. LASH: Your Honor, in looking -- in preparing
7  for the mitigation report, what we discovered is that because
8  of Mr. Palmer's prior conviction in 2010 for promoting the
9  sexual performance of a child under 17, that even under the
10 distribution charges he faces a mandatory minimum of 15 years.
11         THE COURT: Of how long?
12         MS. LASH: 15 years and that was communicated to the
13 defense. I think there was some disagreement on the legal
14 outcome of that but at our last discussion it seems the
15 defense counsel agrees with the government's position that
16 that is the charges that the defendant faces.
17         THE COURT: So, he faces a mandatory minimum of 15
18 years under the current structure of the indictment; is that
19 correct?
20         MS. LASH: There was no disagreement that he always
21 faced a mandatory minimum of 15 years on the top count of
22 sexual exploitation of a child. There was initially some
23 disagreement of whether he faced 15 years on the distribution
24 of child pornography charges and I think that the defense now
25 agrees with the government that even under those lesser counts

5

1  he also faces a mandatory minimum of 15 years.
2          THE COURT:  Well, so on each count you're saying he
3  faces a mandatory minimum of 15 years or on at least two of
4  the counts, is that --
5          MS. LASH:  So, he faces a mandatory minimum of 15
6  years under Counts One through Seven and Count Eight is
7  possession of child pornography and there he faces a mandatory
8  minimum of ten years.  So, I think the defense's hope was that
9  there would be an offer that would allow him to plead to that
10 very bottom count of the indictment and the government's
11 decision at this time is that that's not possible.
12         THE COURT:  Well, it just seems like a lot of time
13 has gone by and that would have been the government's ultimate
14 position whether the report was produced or not, right?  I
15 just --
16         MS. LASH:  Well --
17         THE COURT:  I'm sorry, we -- (audio drop) this
18 time -- I'm sorry, go ahead.
19         MS. LASH:  No, I'm sorry, Your Honor, I didn't mean
20 to interrupt you.  We certainly made clear to the defense that
21 we would look at and consider the report but they ultimately
22 decided not to produce it.
23         THE COURT:  But that is because your decision to
24 them was no matter what the report says this is going to be
25 our position, I mean have I just accurately stated it?

6

1  MS. LASH: No, Your Honor, I wouldn't say no matter
2  what the report said but due to the past conviction and the
3  mandatory minimum that the defendant faced on seven of the
4  eight counts, I think I told the defense that it was highly
5  unlikely.
6  THE COURT: Okay. Then I guess the question is
7  where do we go from here?
8  Ms. David, you indicated you wanted to make motions.
9  MS. DAVID: Yes, Your Honor, I think because we're
10 not able to resolve the case at this time and I know the Court
11 has been patiently awaiting a possible resolution that it
12 maybe makes sense at this point to set a motion schedule.
13 THE COURT: Do you know what motions you would
14 likely make here?
15 MS. DAVID: Based on my current review of the
16 discovery and in discussions with Mr. Palmer, we would likely
17 be filing a motion for the Court to consider dismissing the
18 top count, the attempted sexual exploitation of a child.
19 THE COURT: On what grounds?
20 MS. DAVID: On the grounds that the conduct in this
21 case doesn't meet the DOST, D-O-S-T, standards that are
22 required by the statute and current case law.
23 THE COURT: Is that apparent on the face of the
24 indictment?
25 MS. DAVID: Your Honor, we would argue that it is

1  apparent from the face of the indictment and based on the
2  information that we have received so far in discovery.
3              THE COURT: Any other motions that you envision
4  making?
5              MS. DAVID: I don't anticipate -- I don't anticipate
6  at this time making any other additional motions but would
7  like the opportunity to consider a possible motion to suppress
8  Mr. Palmer's statement.
9              THE COURT: His statement?
10             MS. DAVID: Yes.
11             THE COURT: All right. Ms. David, when can you file
12 these motions?
13             MS. DAVID: Your Honor, I would ask for a date at
14 the beginning of February which I understand is a little bit
15 longer but because of the difficulties we've had getting in
16 touch with our clients at the facility in light of the
17 lockdown, I do want the opportunity to be able to discuss this
18 with Mr. Palmer before filing it.
19             THE COURT: Is it acceptable if I deem you to have
20 made an oral motion today and then give you a date to file
21 your papers?
22             MS. DAVID: I'm sorry, Your Honor?
23             THE COURT: I said is it acceptable to you if I deem
24 that you've made an oral motion today to dismiss the top count
25 of the indictment and I'll give you until February 4th to file

8

1 your papers?
2 　　　　MS. DAVID: Yes, Your Honor, that works for the
3 defense.
4 　　　　THE COURT: And so then time will be excluded from
5 today's date on the basis of pending motions. So, if you
6 could file your papers on the 4th, if the government could
7 respond on February 18th.
8 　　　　MS. LASH: Yes, Your Honor.
9 　　　　THE COURT: And do we have a slot open on February
10 25th?
11 　　　　THE COURTROOM DEPUTY: February 25th, Judge.
12 　　　　THE COURT: Yes.
13 　　　　THE COURTROOM DEPUTY: Yes, we do.
14 　　　　THE COURT: I guess we have to make it at noon.
15 　　　　THE COURTROOM DEPUTY: Yes, just to coordinate with
16 MCC.
17 　　　　THE COURT: Okay. How long, assuming the motion is
18 for some reason not successful, how long is it going to take
19 to try this case does the government believe?
20 　　　　MS. LASH: Your Honor, at this time the government
21 doesn't anticipate that it would take more than three days to
22 try this case.
23 　　　　THE COURT: All right.
24 　　　　MS. LASH: Do we have trial dates in April, let me
25 just ask Ms. Campbell, or jury return dates in April?

9

1    THE COURTROOM DEPUTY:  There are return dates in
2 April, Judge, but I can't confirm if the schedule -- because
3 of the January date that has been pushed back now to February
4 and March but there is a date in April.
5    THE COURT:  What is the date, the jury return date?
6    THE COURTROOM DEPUTY:  One second, Judge, I have to
7 pull up Brenna's email.
8    (Pause.)
9    THE COURTROOM DEPUTY:  So, the first jury return
10 date would be April 5th.
11    THE COURT:  Is there one on April 19th, just to give
12 us a few more --
13    THE COURTROOM DEPUTY:  Yes, Judge.
14    THE COURT:  All right, let's set it down for April
15 19th.
16    MS. DAVID:  I'm sorry, Your Honor --
17    THE COURT:  What's the matter, Ms. David?
18    MS. DAVID:  I'm sorry, Your Honor, I'm actually not
19 available on that date.  Would it be possible to do the next
20 jury return date?
21    THE COURT:  What would that be?
22    THE COURTROOM DEPUTY:  That would be May --
23    THE COURT:  May 3rd.
24    THE COURTROOM DEPUTY:  May 3rd, correct.
25    THE COURT:  Okay, we'll put it down for May 3rd.  Is

10

1  that acceptable to everyone?
2           MS. LASH:  Yes, Your Honor.
3           MS. DAVID:  Yes, Your Honor.
4           THE COURT:  Okay.  All right.  Then the issues will
5  be briefed and then we'll hear argument on the 25th and go
6  from there.
7           Anything else?
8           MS. LASH:  Your Honor, just one more thing from the
9  government, I wanted to put the Court on notice that the
10 government is going to be filing a superseding trial
11 indictment.  We don't intend to drop the top count so I can't
12 see how that would affect the defense's motion but -- and
13 we'll do it just as soon as we can get a grand jury to hear
14 the superseding indictment back.
15          THE COURT:  What is the anticipated change in the
16 indictment?
17          MS. LASH:  The government intends to add a coercion
18 count to the indictment and we'll streamline some of the
19 distribution counts which we charged by image.
20          THE COURT:  What is the effect of adding the
21 coercion count, does that enhance the penalties or --
22          MS. LASH:  No, Your Honor, I don't think it enhances
23 the penalties here but in looking at the conduct and the
24 discovery, we think it is appropriate to add here.
25          THE COURT:  When you say coercion count, in

1   connection with which, the first count of the indictment or
2   what is the -- the coercion count relates to what?
3               MS. LASH:  Yes, Your Honor, it would be the coercion
4   and enticement of John Doe, the minor named in the top count
5   of the indictment.
6               THE COURT:  Okay, but is that -- does that count,
7   the coercion count also carry a 15 year mandatory minimum?
8               MS. LASH:  No, Your Honor, the coercion count would
9   carry a ten year mandatory minimum.
10              THE COURT:  Can you -- you don't have -- I'm sorry,
11  I'm not making any sense.  When do you believe you'll have a
12  grand jury?  You don't have a grand jury right now?
13              MS. LASH:  Not one that is consistent enough for me
14  to give you a date.  Our hope is to file this within the first
15  two weeks of January.  We've lost three of our weekly grand
16  juries so we're down -- we are empaneling new grand juries in
17  the middle of January but we're hoping to do it before then.
18              THE COURT:  All right.  So, it would be important to
19  do this as soon as you can because it might affect Ms. David's
20  motion; in other words, if that adds another element, she was
21  indicating that she believed that on the face of the
22  indictment you couldn't make out the first charge which is --
23  you know, generally those are difficult motions because you
24  have to hear what the evidence is.  I suppose if the evidence
25  were undisputed or if she's not disputing the government's

12

1  version of the facts, maybe there would be a possible motion
2  but she may also want to address this coercion count in her
3  motion papers, so the sooner you can do that the better.  But,
4  Ms. David, I guess you understand, knowing the facts of the
5  case, what the coercion is related to.
6              MS. DAVID:  I do, Your Honor, yeah, it would be
7  helpful to see the new indictment obviously before filing.
8              THE COURT:  Okay.  Well, let's hope you can do that
9  because your papers are due in early February.
10             Anything else that either side needs to address?
11             MS. LASH:  Nothing from the government, Your Honor.
12             THE COURT:  Okay.
13             MS. DAVID:  Nothing from the defense.
14             THE COURT:  Thank you.
15             THE COURTROOM DEPUTY:  Thank you all.  Happy
16 holidays.
17             MS. LASH:  Thank you.
18             (Time noted:  12:21 p.m.)
19             (End of proceedings.)
20
21
22
23
24
25

13

I, HOLLY DRISCOLL, HEREBY CERTIFY THAT:

(A) THE FOREGOING PAGES REPRESENT AN ACCURATE AND COMPLETE TRANSCRIPTION OF THE ENTIRE RECORD OF THE PROCEEDING BEFORE THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF NEW YORK, JUDGE AMON PRESIDING, IN THE MATTER OF UNITED STATES OF AMERICA v. RICHARD PALMER, 19-CR-556(CBA), HELD DECEMBER 22, 2020 AND (B) THESE PAGES CONSTITUTE THE ORIGINAL TRANSCRIPT OF THE PROCEEDING.

HOLLY DRISCOLL, CSR, FCRR

CHIEF COURT REPORTER