

U.S. Department of Justice

United States Attorney
Eastern District of New York

JMS:DEL
F. #2019R00482

271 Cadman Plaza East
Brooklyn, New York 11201

July 20, 2021

<u>By ECF and Email</u>

The Honorable Carol B. Amon
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      Re:  United States v. Richard Palmer
          <u>Criminal Docket No. 19-556 (S-1) (CBA)</u>

Dear Judge Amon:

    The government respectfully submits this letter in advance of sentencing in this case, which is scheduled for July 27, 2021, at 10:00 a.m., and in response to the defendant's sentencing submission dated July 15, 2021 (ECF 48) ("Def. Mem.") (filed under seal).  On April 6, 2021, the defendant Richard Palmer pleaded guilty to coercion and enticement, in violation of 18 U.S.C. § 2422(b), and distribution of child pornography, in violation of 18 U.S.C. §§ 2252(a)(2) and 2252(b)(1).  For the reasons that follow, the government respectfully submits that a sentence within the range of 262 to 327 months in custody, the United States Sentencing Guidelines (the "Guidelines" or "U.S.S.G.") estimate set forth in the parties' plea agreement, would be commensurate with the defendant's serious conduct.

I.  <u>The Offense of Conviction</u>

  A.  <u>Investigation into the Defendant's Distribution of Child Pornography</u>

    In September 2019, a female in her forties ("Complainant #1") reached out to the FBI and stated that the defendant had sent her unsolicited emails containing child pornography.  <u>See</u> Presentence Investigation Report dated June 28, 2021 ("PSR") ¶ 5.  Complainant #1 explained that she was related to the defendant, and he had sent her emails with lewd and vulgar subject lines for more than a year, beginning in October of 2016.

Complainant #1 recognized the defendant's email addresses but upon realizing the nature of the emails, she quickly stopped opening and then avoided the correspondence.  Complainant #1 explained she did not want to have contact with the defendant despite their familial connection, and the subject lines of his emails were lewd and vulgar.  Id.  Several times, Complainant #1 asked the defendant to stopped contacting her and when he refused, she blocked his email addresses, social media accounts and phone number.  The defendant, however, created new email addresses and continued to send graphic messages to Complainant #1.  The emails ceased sometime in 2018.  Id.  However, in September 2019, the defendant resumed emailing Complainant #1 several times a day from his various email addresses, using subject lines of a similar lewd nature to his earlier emails.  Id. ¶ 6.  Complainant #1 decided to file a police report.  Complainant #1 opened some of the emails to confirm they were from the defendant  Though he used several different email addresses, the defendant's authorship was clear: he signed some messages with his name, included a "selfie" or his telephone number in other messages, and referenced his familial relationship to Complainant #1.  In examining the messages, Complainant #1 also saw that they contained images and videos of child pornography featuring children who appeared to be as young as 5 years old, as well as links to sites that she believed likely contained child pornography, based on the web addresses.  Id.

On October 1, 2019, Complainant #1 consented to the FBI accessing her email account and reviewing the emails.  Id. ¶ 10.  The investigating agents determined that the defendant had emailed more than 100 images or videos that depicted child pornography to Complainant #1's email address.  Id.  The following are descriptions[1] of some of the child pornography images associated with the emails sent from the defendant's accounts between September 6, 2019 and September 30, 2019:

> An image that depicts a fully nude girl, approximately ten years old, exposing her genitals, with an adult male penis pictured near the child's right buttock.
>
> An image that depicts a fully nude girl, approximately ten years old, exposing her genitals and masturbating with a toothbrush.
>
> An image that depicts a fully nude girl, approximately ten years old, exposing her genitals and having oral and anal sex performed on her.
>
> An image that depicts a fully nude girl, approximately ten years old, exposing her genitals.

---

[1] The age approximations set forth here are estimates made by law enforcement, based on their training, experience and knowledge of the investigation.

>An image that depicts a fully nude female, younger than approximately ten years old, exposing her genitals.
>
>An image that depicts a fully nude female, approximately between the ages of ten and twelve, exposing her genitals.

Id.

Law enforcement obtained subscriber information and Internet Protocol ("IP") logs for the email addresses that contacted Complainant #1 between September 1, 2019, and October 8, 2019, which revealed that the email accounts were associated with two IP addresses.  Id. ¶ 11.  The first IP address was assigned to the defendant's residence in the 2019 time period, and the customer on the account was the defendant's mother, with whom the defendant resided.  Id.  The second IP address had been assigned to the defendant's residence from July 24, 2018 through September 1, 2018, and the customer on the account was the defendant's mother.  Id.

Additionally, the telephone number associated with one of the email accounts ("Telephone Number 1") had been cited in an August 6, 2019 Incident/Investigation Report filed with the Columbia County Sheriff's Office in Evans, Georgia.  Id. ¶ 13.  According to that report, a twenty-three-year-old male ("Complainant #2") informed the Sheriff's Office that he had met a user named "RedSer" in the chat room xvideos.com, and the two subsequently exchanged text messages; "RedSer" used Telephone Number 1 during those exchanges.  Id.  Complainant #2 reported that "RedSer" used Telephone Number 1 to send Complainant #2 text messages containing multiple images of child pornography.  Id.  Toll records revealed that the user of Telephone Number 1 had exchanged more than 100 communications with Complainant #2.  Id.  The instant investigation revealed that one of the defendant's email addresses was RedSerr53@gmail.com.

On November 1, 2019, the agents executed a judicially authorized search warrant on the defendant's residence, during which they seized two cellular telephones that contained images, videos, .gif, and various other forms of media containing child pornography.  Id. ¶ 14.  After the search, the defendant was read and waived his Miranda rights and agreed to speak with law enforcement.  Id. ¶ 15.  The defendant told the interviewing agents that he knew the agents were at his apartment because of the emails he had sent to Complainant #1.  Id.  The defendant acknowledged that he operated the accounts that had been used to send the emails to Complainant #1, and when shown some of the child pornography that had been sent to Complainant #1, the defendant confirmed he had sent those images.  Id.  The agents also showed the defendant one of the cellular telephones they recovered during the search of his residence; the defendant admitted that the phone was his

3

and he had downloaded images of child pornography. Id. ¶ 17. Following this interview, the agents arrested the defendant.

Forensic analysis of the cellular telephones seized from the defendant revealed that they contained 6,949 images and 33 video clips of child pornography that depicted children engaged in sexually explicit activities. Id. ¶ 18.

### B. Investigation into the Defendant's Abuse of John Doe #1

Further analysis of the phone also revealed that in January or February 2019, the defendant took sexually explicit photographs featuring an 11-year-old boy who was known to him since approximately 2013 ("John Doe #1"). Id. ¶ 21. The images, in which John Doe #1 is fully clothed and appears to be sleeping in the defendant's bedroom, included: the defendant masturbating onto John Doe #1; the defendant's face against John Doe #1's buttocks as the defendant pretended to perform oral sex; the defendant, in a video, pantomiming the act of "humping" John Doe #1; and the defendant's penis near John Doe #1's buttocks. Id. The defendant's phone contained 146 sexually explicit images and 19 sexually explicit videos featuring the defendant and John Doe #1. Id. John Doe #1 is wearing different outfits in the images, indicating that they were taken on different occasions. Id.

The defendant then sent the images of himself and John Doe #1 to John Doe #1's cell phone, beginning in February 2019. Accompanying these images, the defendant included graphic messages about the sexual acts the defendant wanted to perform on John Doe #1. Between February 2019 and October 2019, the defendant also sent thousands of other text messages to John Doe #1. In some messages, the defendant talked about spending time with John Doe #1, asked John Doe #1 about their mutual love of drawing and encouraged John Doe #1 to talk about his problems and feelings. Other messages the defendant crafted, however, were graphic and sexually explicit. Id. ¶ 22 (listing examples of messages from defendant to John Doe #1). In these messages, the defendant used John Doe #1's first name and referred to his age (11 years old); the defendant called himself a pedophile; he solicited photographs of John Doe #1's genitals; and the defendant sought to persuade John Doe #1 to enter into a sexual relationship with him.

In a forensic interview, John Doe #1 denied that he was physically assaulted by the defendant and denied that he was aware of any photographs or videos featuring himself and the defendant. John Doe #1 also stated that when he began receiving messages from the defendant, he blocked the defendant from sending future messages to his phone. Id. ¶¶ 23-24. In an interview with law enforcement, John Doe #1's mother stated she believed messages from the defendant were blocked from John Doe #1's phone starting in April 2019.

4

II.   Procedural History

On April 6, 2021, the defendant pleaded guilty, pursuant to a plea agreement, to two counts of a ten-count Superseding Indictment: coercion and enticement of a minor victim (Count One) and distribution of child pornography (Count Three). Id. ¶ 1.[2] Furthermore, the defendant acknowledged that he distributed child pornography after his November 1, 2020 state conviction for attempted promotion of a sexual performance by a child, in violation of New York Penal Law § 263.15 and 110, thereby subjecting him to increased penalties in Section 2252(b)(1). PSR ¶ 1.

III.   Legal Standard

A "district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range. As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark." Gall v. United States, 552 U.S. 38, 49 (2007) (citation omitted). Next, a sentencing court should "consider all of the § 3553(a) factors to determine whether they support the sentence requested by a party. In so doing, [it] may not presume that the Guidelines range is reasonable. [It] must make an individualized assessment based on the facts presented." Id. at 50 (citation and footnote omitted). Title 18, United States Code, Section 3553(a) provides that, in imposing sentence, the Court shall consider:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed—
>
> > (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> >
> > (B) to afford adequate deterrence to criminal conduct; [and]
> >
> > (C) to protect the public from further crimes of the defendant.

Section 3553 also addresses the need for the sentence imposed "to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(2)(D). "[I]n determining whether to impose a term of imprisonment, and, if a term of imprisonment is to be imposed, in determining the length of the term, [the Court] shall consider the factors set forth in section

---

[2] The government will dismiss the remaining counts at the sentencing hearing.

5

3553(a) to the extent that they are applicable, recognizing that imprisonment is not an appropriate means of promoting correction and rehabilitation." 18 U.S.C. § 3582(a).

At sentencing, "the court is virtually unfettered with respect to the information it may consider." United States v. Alexander, 860 F.2d 508, 513 (2d Cir. 1988). Indeed, "[n]o limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence." 18 U.S.C. § 3661. Thus, the Court should first calculate the applicable Guidelines range, and then apply the Section 3553(a) factors to arrive at an appropriate sentence, considering all relevant facts.

IV. Guidelines Calculation

    A. The Applicable Guidelines Range

The government submits that the following Guidelines calculation, which is consistent with the calculation set forth in the PSR, should be adopted by the Court[3]:

Count One: Coercion and Enticement

| | |
|---|---|
| Base Offense Level (§ 2G1.3(a)(3)) | 28 |
| Plus: The minor was in the custody, care or supervisory control of the defendant (§ 2G1.3(b)(1)(B)) | +2 |
| Plus: The offense involved the use of a computer or interactive computer service to persuade, induce, entice, coerce the minor to engage in the prohibited sexual conduct (§ 2G1.3(b)(3)(B)) | +2 |
| Plus: The offense involved a minor less than 12 (§ 2G1.3(b)(5)) | +8 |
| Total: | 40 |

Count Three: Distribution of Child Pornography

| | |
|---|---|
| Base Offense Level (U.S.S.G. § 2G2.2) | 22 |
| Plus: The material involved a prepubescent minor or a minor who had not yet reached the age of 12 (§ 2G2.2(b)(2) | +2 |

---

[3] As outlined in more detail herein, this calculation differs from the calculation set forth in the plea agreement in this case but is premised on correct facts and thus should be adopted by the Court.

6

| | |
|---|---:|
| Plus: The defendant knowingly engaged in the distribution (§ 2G2.2(b)(3)(F)) | +2 |
| Plus: The material involved sexual abuse or exploitation of an infant or toddler (§ 2G2.2(b)(4)(B)) | +4 |
| Plus: The offense involved the use of a computer or interactive computer service for the transmission or distribution of the material (§ 2G2.2(b)(6)) | +2 |
| Plus: The offense involved 600 or more images (§ 2G2.2(b)(7)(D)) | <u>+5</u> |
| Total: | <u>37</u> |

Multiple Count Analysis (§§ 3D1.1, 3D1.2, 3D1.3, 3D1.4)

| | Level | Units |
|---|:---:|:---:|
| Count One | 40 | 1.0 |
| Count Three | 37 | 1.0 |

\* \* \*

| | |
|---|---:|
| Highest Adjusted Offense Level: | 40 |
| Plus: Increase in Offense Level (§ 3D1.4) | +2 |
| Less: Acceptance of Responsibility (§ 3E1.1) | <u>−3</u> |
| Total Adjusted Offense Level | <u>39</u> |

PSR ¶¶ 31-54. Based upon a total offense level of 39 and Criminal History Category III, the applicable Guidelines range for the defendant is 324 to 405 months' imprisonment. Id. ¶ 108. The defendant faces a mandatory minimum term of imprisonment of 10 years for Count One and 15 years for Count Three. Id. ¶ 107.

The Guidelines calculation differs slightly from the government's initial estimate, as set forth in the plea agreement between the parties. Specifically, the government's initial calculation understated the defendant's criminal history as Category II and overlooked the enhancement levied for material that portrays sexual abuse or exploitation of an infant or toddler under U.S.S.G. § 2G2.2(b)(4)(B). Consequently, the government's estimate resulted in a base offense level of 38 and a Guidelines range of 262 to 327 months' imprisonment. The

government acknowledges that the Probation Department's Guidelines calculation is correct, but will nevertheless abide by its estimate in the plea agreement.

B. The Defendant's Objections to the PSR

The defendant offers two objections to the PSR, neither of which have merit.

First, the defendant asserts that John Doe #1 was not in the defendant's custody, care or supervisory control and therefore the two-point enhancement under U.S.S.G. § 2G1.3(b)(1)(B) is not warranted. See Def. Mem. at 5. To the contrary, given the preexisting relationship between the defendant and John Doe #1, the nature of their relationship, the rationale for applying the enhancement and its broad application, it should apply here.

The enhancement for care, custody and supervision outside legal guardianship is "intended to have broad application." U.S.S.G. § 2G1.3 cmt. n.2(A). The Guidelines counsel the application of the enhancement when the victim was entrusted into the defendant's care, even temporarily, and includes relationships like teachers, day care providers, baby-sitters, or other temporary caretakers. Id. The Courts should look "to the actual relationship that existed between the defendant and the minor." Id.; see also United States v. Brooks, 610 F.3d 1186, 1201 (9th Cir. 2010). The Ninth Circuit in Brooks noted that applying the enhancement to defendants who have a preexisting relationship with their victims "makes sense" because "it is the abuse of authority over the minor that makes the offense conduct more egregious and thus worthy of enhancement." Brooks, 610 F.3d at 1201.

The defendant and John Doe #1 had known each since 2013—a six-year relationship that began when John Doe #1 was 6 years old. They had a relationship that existed before and apart from the charged offenses, which are believed to have begun in 2019. In the years preceding the charged conduct, John Doe #1 slept overnight at the defendant's home, visited the defendant after school to take care of and spend time with the defendant's pets, and the defendant sent text messages to John Doe #1 discussing his life and others activities they had done together, to which John Doe #1 would reply. The defendant himself states he "recalls wanting to be a father figure to John Doe #1." Def. Mem. at 4.

Second, the defendant claims that the eight-point enhancement pursuant U.S.S.G. § 2G1.3(b)(5) for a victim less than 12 years old should not apply because John Doe #1 turned 12 during the charged period. See Def. Mem. at 5. The Court should reject this argument because John Doe #1 was 11 years old for much of the material time in this case. See United States v. Hammond, 698 F.3d 679, 680 (8th Cir. 2012) (applying the eight-

8

point enhancement "[b]ecause [the defendant's] victim was eleven years old for much of the material time period in this case). Here, the defendant pleaded guilty to the coercion and enticement of John Doe #1 in or about and between January 2019 and October 2019. John Doe #1 turned 12 in June 2019—six months into the ten-month period of conviction. Much of the charged conduct in the case occurred between January and April 2019 when John Doe #1 was only 11 years old. Indeed, when John Doe #1 was 11, the defendant took explicit photographs of himself and John Doe #1 and sent those photographs to him (along with hundreds of graphic and sexually explicit messages). In addition, in several of those text messages, the defendant expressly commented on John Doe's age. For example, on February 14, 2019, the defendant wrote, "you're only 11 but I really don't give a fuck." By referring to John Doe #1's age, the defendant expressly acknowledged his victim was under 12, and accordingly, the enhancement should be applied here.

Accordingly, for these reasons, both enhancements are properly applied to the defendant's Guidelines calculation, and the government asks the Court to apply the enhancements here.[4]

V.  <u>Argument</u>

The government respectfully submits that a sentence within the range of 262 to 327 months' imprisonment would be sufficient, but not greater than necessary, to achieve the goals of sentencing in this case. Such a sentence is appropriate given the nature and seriousness of the offenses, the history and characteristics of the defendant, and the need for the sentence to reflect the seriousness of the offenses, to promote respect for the law, to provide just punishment, to afford adequate deterrence and to protect the public.

The nature and circumstances of the defendant's crimes are repugnant and have indelibly harmed young, defenseless victims. For nearly a year, the defendant, a 39-year-old man, sought to enter into a sexual relationship with John Doe #1, a vulnerable 11-year-old boy. As the hundreds of text messages the defendant sent to John Doe #1 illustrate, the defendant groomed John Doe #1 and cultivated a relationship of trust in order to abuse him. The defendant used that trust to violate John Doe #1's privacy, dignity and safety. While John Doe #1 slept in the defendant's bedroom, the defendant, with his genitals

---

[4] If the Court determines it would impose the same sentence regardless of the enhancements' applicability, the Court can state as much on the record, rendering any error in the Guidelines calculation harmless. <u>See, e.g.</u>, <u>United States v. Jass</u>, 569 F.3d 47, 65 (2d Cir. 2009) (finding an enhancement was not properly applied but that any error was harmless because the district court expressly stated it would have imposed the same below-Guidelines sentence regardless of the enhancement's applicability).

exposed, pretended to engage in sexual acts with John Doe #1. Throughout his perverse pantomime, the defendant documented his lewd actions on his phone for his future indulgence. Law enforcement found 146 photographs and 19 videos of the defendant enacting his fantasy on a sleeping John Doe #1. The defendant then sent these images to John Doe #1 himself with graphic, sexually explicit messages about the sexual relationship the defendant and John Doe #1 could have together. Regardless of whether John Doe #1 received those images, the defendant's intent was clear: he hoped John Doe #1 would see those images and enter into a sexual relationship with him.

Complainant #1 is another victim of the defendant's crimes. For years, she received unsolicited and sexually explicit emails from the defendant. In September 2019, she discovered the content she had been sent featured helpless children depicted in graphic, sexual scenes. As noted herein, she reported the defendant to the FBI and cooperated with their investigation in the hopes of alleviating some of the harm the defendant was inflicting. That, however, does not erase the harassment she endured or the shock of uncovering what the defendant was engaged in or intended for her. Complainant #2 clearly suffered the same affliction—being targeted by a relentless predator intruding on his privacy and security.

Finally, and just as importantly, the defendant directly and repeatedly victimized child victims through his collection and distribution of images of child pornography. Possession of videos and images of abuse, alone, fosters a market for more abuse. See, e.g., United States v. Gouse, 468 F. App'x 75, 78 (2d Cir. 2012) (affirming sentence where district court had "observed that, contrary to [the defendant's] contention, his crimes are not victimless because they create[] a market for child pornography and thus harm children, scarr[ing] [them] for life" (internal quotation marks omitted)); United States v. Miller, 594 F.3d 172, 189 (3d Cir. 2010) ("[P]ossession of even a small number of images of child pornography contributes to the victimization of children and creates a market for child abuse." (internal quotation marks omitted)). "Child pornography harms and debases the most defenseless of our citizens. Both the State and Federal Governments have sought to suppress it for many years, only to find it proliferating through the new medium of the Internet." United States v. Williams, 553 U.S. 285, 307 (2008). "The prevention of sexual exploitation and abuse of children constitutes a government objective of surpassing importance," New York v. Ferber, 458 U.S. 747 (1982), and this interest extends to seeking to stamp out child pornography at all levels in the distribution chain, Osborne v. Ohio, 495 U.S. 103, 110 (1990). Here, the defendant was found to be in possession of nearly 7,000 child pornography images and videos, including images and videos which depicted the rape and sexual abuse of children, toddlers and infants. Unquestionably, these images depict abuse of the most vulnerable victims, and the defendant was not an ignorant or passive consumer of child pornography. Instead, the evidence shows that the defendant received and

distributed these images to Complainant #1 and #2, whether they elected to receive these images or not.

If his actions in this case were not troubling enough, the defendant's history and characteristics indicate that he is a serial sexual predator. In 2010, the defendant harassed a woman and threatened to rape her, calling and texting her 42 times in a month and a half—an average of at least once a day. PSR ¶ 61. That same year, the New York City Police Department was alerted that the defendant had shared child pornography through his Yahoo account, after which a detective found 40 images of child pornography on the defendant's computer. Id. ¶ 62. The defendant was convicted and ultimately served less than two years' imprisonment. Id. Since his release in July 2013, the defendant has not been deterred. Rather, his criminal sexual conduct has escalated: the defendant's collection of child pornography grew from 40 images to nearly 7,000 images, and he turned his attention away from images and videos to a live 11-year-old boy. A lengthy sentence of imprisonment is therefore necessary to specifically deter him from committing future crimes and to protect the public.

Finally, a Guidelines sentence would serve to provide general deterrence to others who would sexually exploit children. Viewing images of the sexual exploitation of children has become all too easy in a digital era. Before the proliferation of the Internet, an individual had to find a source that would place the material into the mail bearing a name and address. That individual had to go to the place where the material was delivered, further risking discovery. In contrast, in an online environment, it is easier for an offender to access and distribute child pornography undetected by law enforcement, using a screen name that hides his identity and location. The development of pay sites in foreign countries and the use of internet chat rooms also have made it easier to collect material that once was difficult to collect. Because this crime is so easy to commit, but so difficult to detect, a sentence must give notice that the crime has serious consequences in order to provide general deterrence.

The defendant seeks a downward variance to a sentence of 15 years' imprisonment (the mandatory minimum sentence for Count Three) on the basis that ████████████████████████████████████████████████████████████████ and the conditions at the Metropolitan Correctional Center ("MCC") were excessively harsh during his pretrial confinement, id. at 6-8. None of these factors alone or in totality warrant the proposed sentence, which is nearly half of the low-end of Guidelines range applicable here (27 years' imprisonment) and a significant discount from the low-end of the range requested by the government (21 years and 10

11

months' incarceration), in light of the defendant's egregious conduct and history of abusing children.[5]



---

[5] The government respectfully requests that a redacted version of this letter be filed publicly, sealing this select portion of the motion that reveals health information protected by the Health Insurance Portability and Accountability Act of 1996 ("HIPAA") and sensitive information about the defendant's childhood that has not otherwise been disclosed in the defendant's filings. See Offor v. Mercy Med. Ctr., 167 F. Supp. 3d 414, 445 (E.D.N.Y. 2016) ("Courts in this Circuit have repeatedly held that information protected by HIPAA is not subject to a First Amendment or common-law right of access and thus have sealed docket entries and redacted documents that contain such information."), vacated in part on other grounds, 676 F. App'x 51 (2d Cir. 2017).

██████████████████████████████████████

The defendant also seeks a variance in light of the conditions that resulted from the COVID-19 pandemic. Although "pre-sentence confinement conditions may in appropriate cases be a permissible basis for downward departures," <u>United States v. Carty</u>, 264 F.3d 191, 196 (2d Cir. 2001), a departure or variance is not appropriate here. In the face of the global pandemic, the MDC modified operations and adopted precautionary measures to safeguard the health and safety of its inmates, staff and the community at large. As explained, the defendant is a serial sexual predator whose actions have escalated since his first arrest for child pornography; the fact that he has endured difficult conditions of confinement has no true bearing on the severity of his conduct.

VI. <u>Conclusion</u>

For the foregoing reasons, the government respectfully submits that a sentence within the applicable Guidelines range of 262 to 327 months is appropriate in this case.

Respectfully submitted,

JACQUELYN M. KASULIS
Acting United States Attorney

By: /s/ Devon Lash
Devon Lash
Assistant U.S. Attorney
(718) 254-6014

cc: Amanda L. David, Esq. (counsel for the defendant) (by ECF and email)
Patricia A. Sullivan, U.S. Probation Officer (by email)